IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01489–EWN–BNB

BROADBAND MANAGEMENT SOLUTIONS, LLC,
a Delaware limited liability company,

    Plaintiff,

v.

DISH NETWORK SERVICE L.L.C.,
a Colorado limited liability company, formerly known
as DISH Network Service Corporation,

    Defendant.

## ORDER AND MEMORANDUM OF DECISION

    This is a breach of contract case. Plaintiff Broadband Management Solutions, LLC, alleges that Defendant Dish Network Service, LLC, breached the contract between them by failing to provide written notice upon acceptance of certain Software.[1] This matter is before the court on "Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to

---

[1] As described in more detail below, "Software" is defined by the parties as "[Plaintiff's] MobileForce workforce management software as described in the Agreement between the parties and in Exhibit A, attached [th]erein." (First Am. Compl. and Jury Demand [filed Sept. 15, 2004] [hereinafter "Am. Compl."], Ex. 1 ¶ 1 [Software License and Services Agreement].)

Federal Rules of Civil Procedure 12(b)(6)," filed October 8, 2004. Jurisdiction is based on 28 U.S.C. § 1332, diversity of citizenship.

**FACTS**

*1.    Factual Background*

The following facts are taken from Plaintiff's amended complaint and the parties' submissions to the court with respect to the pending motion. Plaintiff is in the business of software development and service. (Am. Compl. ¶ 6.) Plaintiff developed MobileForce ("the Software"), a workforce management software package. (*Id.*) The Software automates workflow processes for scheduling, routing, dispatching, and managing daily operation tasks assigned to field service technicians of Plaintiff's customers. (*Id.*)

On November 8, 2003, Plaintiff and Defendant entered into a Software License Agreement (the "Agreement"). (*Id.* ¶ 7.) Pursuant to section 2.1 of the Agreement, Plaintiff agreed to "develop, create, build, maintain, and implement the Software and Services described in this Agreement and its Exhibits . . ." (*Id.* ¶ 8.) The Agreement envisioned cooperation between Plaintiff and Defendant to develop and enhance the Software for use on Defendant's systems. (*Id.* ¶ 9.) In consideration for Plaintiff's performance of its obligations under the Agreement, Defendant agreed to pay Plaintiff certain non-recurring fees and certain recurring fees as defined by Exhibit B to the Agreement. (*Id.*, Ex. 1 [Software License and Services Agreement, Ex. B

(fees)].) Defendant's payment obligations include the following: (1) payment of $150,000 upon execution of the Agreement; (2) payment of an additional $400,000 upon satisfaction of the Acceptance Criteria for Release 1 of the Software; (3) payment of an additional $50,000 per month for each of the twelve months after satisfaction of the Acceptance Criteria for Release 1 of the Software; (4) payment of an additional monthly fee of $158,333.33 per month for each of the twelve months after satisfaction of the Acceptance Criteria for Release 1 of the Software; and (5) payment of an increased monthly fee for each of the thirteenth through thirty-six months of the Agreement. (*Id.* ¶ 11.) Defendant made its initial $150,000 payment upon the parties' execution of the Agreement. (*Id.*)

Exhibit D to the Agreement is entitled "Statement of Work." (*Id.*, Ex. 2 [Statement of Work].) The Statement of Work specifies and defines the sequence of steps Plaintiff and Defendant must perform under the Agreement both separately and in cooperation with each other. (*Id.* ¶ 13.) Chapter six of the Statement of Work addresses the Software Development Process. (*Id.* ¶ 14.) The Software Development Process encompasses (1) completion of the Extended Product Feature Set Development; (2) the Software development; and (3) the Software system testing by Plaintiff. (*Id.* ¶ 15.)

Following the completion of the Software Development Process, the Agreement requires that Plaintiff conduct the Customer Acceptance Test Process. (*Id.* ¶ 16.) Section seven of the

Statement of Work provides that the Customer Acceptance Test Process has two distinct components. (*Id.* ¶ 17.)  The first component is the Factory Acceptance Test ("FAT"), defined as the "functional test of the [S]oftware performed by [Defendant] at [Plaintiff's] facility." (*Id.*) The FAT criteria constitute the "Acceptance Criteria" referred to in section five of the Agreement. (*Id.*)

After Plaintiff and Defendant entered into the Agreement, Plaintiff began performance of the Agreement. (*Id.* ¶ 20.)  Consistent with section 6.1 of the Statement of Work, the parties received and finalized the Extended Feature Document for Release 1 of the Software. (*Id.* ¶ 21.) Plaintiff and Defendant approved the final Extended Feature Document for Release 1 of the Software. (*Id.*)  Plaintiff then developed Release 1 of the Software consistent with the Extended Feature Document for Release 1 of the Software, as provided in section 6.2 of the Statement of Work.  (*Id.* ¶ 22.)  Plaintiff then tested Release 1 of the Software as provided in section 6.3 of the Statement of Work. (*Id.* ¶ 23.)  Defendant prepared the test plan for Release 1 of the Software despite the fact section that 7.1 of the Statement of Work provides that Plaintiff would prepare the FAT plan subject to the reasonable approval of Defendant. (*Id.* ¶ 24.)  The Release 1 Test Plan that Defendant prepared included a schedule for the testing. (*Id.* ¶ 25.)  The last item in the schedule that Defendant prepared stated "Obtain [Defendant] Executive Signature." (*Id.*)

Defendant's personnel performed the FAT on Release 1 of the Software at Plaintiff's facilities between May 27, 2003 and June 6, 2003. (*Id.* ¶ 26.) As Defendant finished each individual test, Defendant's personnel placed their initials on a checklist in an effort to document that Release 1 of the Software satisfied that particular test requirement. (*Id.*) Defendant's personnel conducted 243 individual test requirements. (*Id.* ¶ 27.) Defendant's personnel initially concluded that Release 1 of the Software passed 239 of the 243 test requirements. (*Id.*) During the testing period, Plaintiff modified Release 1 of the Software to address the four deficiencies noted by Defendant in its initial testing. (*Id.* ¶ 28.) Defendant re-tested Release 1 of the Software and concurred that the four noted deficiencies had been corrected by June 6, 2003. (*Id.* ¶ 29.) Defendant successfully completed the FAT of the initial Software Release, as defined by the Agreement, by June 6, 2003. (*Id.* ¶ 30.) Plaintiff asserts that because Release 1 of the Software passed the FAT, Defendant was obligated to provide Plaintiff with written approval and acceptance of Release 1 of the Software, and Defendant was obligated to perform its remaining payment obligations under the Agreement. (*Id.* ¶ 31.)

**2.    *Procedural History***

On July 20, 2004, Plaintiff filed a complaint in this court. (Compl. and Jury Demand [filed July, 20, 2004].) Plaintiff asserted two claims: (1) breach of contract and (2) promissory

estoppel. (*Id.* ¶¶ 12–19.) On September 15, 2004, Plaintiff amended its complaint and asserted the same claims for relief. (Am. Compl.)

On October 8, 2004, Defendant filed a motion to dismiss. (Def.'s Mot. to Dismiss Pl.'s First Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) [filed Oct. 8, 2004] [hereinafter "Def.'s Br."].) Defendant argues that (1) Plaintiff failed to plead facts that Defendant accepted Release 1 of the Software under the terms of the agreement; (2) Plaintiff failed to plead facts that it cured the deficiencies in the Software Release after Defendant gave Plaintiff notice of default; and (3) Plaintiff cannot maintain a claim for promissory estoppel because a formal contract exists. (*Id.* at 8–15.) On November 1, 2004, Plaintiff filed its response to Defendant's motion to dismiss. (Pl.'s Resp. to Mot. to Dismiss First Am. Compl. [filed Nov. 1, 2004] [hereinafter "Pl.'s Resp."].) On November 16, 2004, Defendant filed its reply in support of the motion to dismiss. (Def.'s Reply to Pl.'s Resp. to Mot. to Dismiss First Am. Compl. [filed Nov. 16, 1004] [hereinafter "Def.'s Reply"].)

## ANALYSIS

*1.      Standard of Review*

For the purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should only dismiss the claim "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of

the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 [10th Cir. 1997]). "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Id.* (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 [10th Cir. 1999]).

### 2. *Evaluation of Claims*

#### a. *Breach of Contract*

Plaintiff's first claim for relief is for breach of the Agreement between the parties. (Am. Compl. ¶¶ 36–44.) Specifically, Plaintiff alleges that Defendant's "failure to provide written acceptance of Release 1 of the Software was a breach of [s]ection 5 of the Agreement and [s]ection 7.1.2 of the Statement of Work, that is Exhibit D to the Agreement." (Pl.'s Resp. at 6.)

Under Colorado law, to survive a motion to dismiss on a breach of contract claim, Plaintiff's complaint must allege facts that if proven would establish: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Here, Plaintiff sufficiently alleges the existence

of a contract.  (Am. Compl. ¶ 7, Ex. 1 [Software Licenses and Services Agreement].)

Additionally, Plaintiff alleges that it performed under the terms of the Agreement because it

delivered Release 1 of the Software in accordance with the Acceptance Criteria.  (*Id.* ¶¶ 22–35.)

With respect to the third element, Plaintiff asserts that Defendant did not perform under

the terms of the Agreement because "[o]nce [Plaintiff] delivered Release 1 of the Software in

accordance with the Acceptance Criteria, [Defendant] was obligated to provide written notice to

[Plaintiff] of [Defendant's] acceptance of Release 1 of the Software."  (*Id.* ¶ 38.)  Plaintiff alleges

that Defendant's failure to provide such written notice of acceptance was a material breach of

section five of the Agreement.  (*Id.* ¶ 39.)  Section five of the Agreement states:

> Acceptance.  The [Defendant's] acceptance of the Software Releases (defined
> herein) and Services shall be deemed to occur upon (1) delivery by [Plaintiff] of
> the Software Release in accordance with the acceptance criteria and methods
> ("Acceptance Criteria") in Exhibit D, and (2) [Defendant] providing written notice
> to [Plaintiff] that [Defendant] has examined and tested the Software Release, and
> determined that the Software Release is in compliance with the Acceptance
> Criteria.

(*Id.*, Ex. 1 § 5 [Software Licenses and Services Agreement].)  Plaintiff alleges that Exhibit D of the

Agreement, the Statement of Work, sets forth the Acceptance Criteria.  (*Id.* ¶ 17; Pl.'s Resp. at

4.)  Exhibit D states that "[u]pon completion of . . . [the] Software FAT, the Software Release . .

. will be considered accepted by [Defendant], and having met the Acceptance Criteria as defined

and referenced in [s]ection [five] of the Agreement."  (Am. Compl., Ex. 2 ¶ 7.0 [Statement of

Work].)  Further, Exhibit D states that "[i]f the test results meet the pass/fail criteria in the FAT procedures, [Plaintiff] will obtain [Defendant's] written approval.  If the test results do not meet the pass/fail criteria, [Defendant] will withhold its approval." (*Id.*, Ex. 2 ¶ 7.1.2 [Statement of Work].)

Plaintiff's complaint alleges that Defendant prepared the FAT plan which contained 243 test requirements.  (*Id.* ¶ 24.)  Defendant's personnel performed the FAT on Release 1 of the Software between May 27, 2003 and June 6, 2003.  (*Id.* ¶ 26.)  Plaintiff alleges that Release 1 of the Software passed all 243 individual test requirements, and Defendant's test personnel documented this by placing their initials on a checklist.  (*Id.* ¶¶ 24–30.)  Plaintiff alleges that Defendant determined Release 1 of the Software was in compliance with all of the Acceptance Criteria specified by Defendant in the FAT, however, Defendant refused to provide its formal written approval and acceptance of Release 1 of the Software in accordance with section seven of Exhibit D and section five of the Agreement.  Thus, accepting the allegations in Plaintiff's complaint as true, Plaintiff has demonstrated facts sufficient to prove that Defendant failed to perform the Agreement.  Finally, Plaintiff asserts facts sufficient to show resulting damages.  (*Id.* ¶ 48.)  Accordingly, the allegations in Plaintiff's complaint state a cognizable claim for breach of the Agreement.

Defendant offers numerous arguments that counsel against this result. First, Defendant alleges that "the Agreement repeatedly references acceptance pursuant to [s]ection [five], not the [Statement of Work]." (Def.'s Br. at 9.) Plaintiff's complaint alleges that section five in conjunction with Exhibit D, the Statement of Work, controls the acceptance. (Am. Compl. ¶¶ 36–44.) According to the complaint Plaintiff is not alleging that the Statement of Work, in and of itself, is controlling. Defendant's argument to the contrary is unavailing.

Second, Defendant alleges that the Statement of Work does not control any part of the inquiry because it is not part of the Agreement. (Def.'s Br. at 10–11.) Defendant asserts that the Statement of Work was (1) drafted subsequent to the Agreement and (2) not signed by both the parties. (*Id.*) Defendant contends that "[Plaintiff's] [Statement of Work] was never accepted by [Defendant] and it cannot rewrite or override the acceptance criteria that the parties agreed to in the Agreement." (*Id.* at 11.) Defendant's argument is misplaced at this stage of the litigation. Plaintiff's complaint alleges that the Statement of Work is part of the Agreement. (Am. Compl. ¶ 12.) Specifically, Plaintiff alleges that the Statement of Work is Exhibit D to the Agreement. (*Id.*) Plaintiff alleges that the agreement which Plaintiff and Defendant entered into included Exhibit D, the Statement of Work. Plaintiff is not alleging that Exhibit D, the Statement of Work, is a separate contract, thus, execution by both parties is not necessarily a requirement.

Third, Defendant contends that even if it is bound by the terms of the Statement of Work, Plaintiff failed to plead sufficient facts to show that Defendant breached the Agreement. (Def.'s Br. at 11–12.) Specifically, Defendant alleges that "[Plaintiff] failed to plead that any Customer Acceptance Documents were ever signed[,]" in accordance with the Statement of Work. (*Id.* at 12.) This is exactly the basis of Plaintiff's breach of contract claim. Plaintiff alleges that Defendant's refusal to sign the various documents constitutes breach itself. (Am. Compl. ¶¶ 31–33.) Thus, Defendant's argument as to this point is equally unavailing.

Finally, Defendant asserts that "[Plaintiff] conclusorily [sic] alleges that [Defendant's] engineers signed off on the FAT testing. . . . However, [Plaintiff] failed to attach anything signed by [Defendant's] engineer(s) indicating who signed, what was signed or when." (Def.'s Reply at 5–6.) Defendant misstates the level of proof necessary to survive a motion to dismiss. When reviewing the sufficiency of a complaint, a court presumes all of the plaintiff's factual allegations are true and construes them in a light most favorable to the plaintiff. *Dubbs*, 336 F.3d at 1201. Thus, I must accept as true Plaintiff's allegation that Defendant's engineers signed off on the FAT testing. Further, at this stage of the litigation, Plaintiff is not required to submit potential evidence it might present at trial in support of its claims. *Id.* "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief

may be granted." *Id.* Accordingly, Plaintiff's failure to attach documents in support of its allegation that Defendant's personnel approved the testing is not fatal to Plaintiff's breach of contract claim at this stage.

### *b.  Promissory Estoppel*

Plaintiff's second claim for relief is for promissory estoppel. (Am. Compl. ¶¶ 45–48.) Defendant contends that Plaintiff's promissory estoppel claim should be dismissed because Plaintiff cannot maintain a claim for promissory estoppel when a valid contract exists. (Def.'s Br. at 14.) Promissory estoppel is "applicable only in the absence of an otherwise enforceable contract." *Scott Co. of California v. MK-Ferguson Co.*, 832 P.2d 1000, 1003 (Colo. App. 1992) (citing *Gilmore v. Ute City Mortgage Co.*, 660 F. Supp. 437, 440 [D. Colo. 1986].) The alternative remedy of promissory estoppel is never reached where, as here, "there has been mutual agreement by the parties on all essential terms of a contract." *Vigoda v. Denver Urban Renewal Auth.*, 646 P.2d 900, 905 (Colo. 1982). This principle recognizes two exceptions. *Interbank Inv., LLC, v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). First, a party can recover on a promissory estoppel theory when the implied agreement is based upon "the conduct of the parties subsequent to, and not covered by, the terms of the express contract." *Scott*, 832 P.2d at 1003. Second, a party can recover on a promissory estoppel theory when the party "'will have no right under an enforceable contract.'" *Interbank*

*Inv.*, 646 P.2d at 816 (quoting *Backus v. Apishapa Land & Cattle Co.*, 615 P.2d 42, 44 [Colo. App. 1980]).

Here, Plaintiff and Defendant admit that there is a fully integrated enforceable Agreement between them, (Am. Compl. ¶ 7; Def.'s Reply at 10), however, Plaintiff contends that its promissory estoppel claim falls under the first exception described above. (Pl.'s Resp. at 10.) Plaintiff alleges that

> [i]n conjunction with the successful completion on June 6, 2003, of the [FAT] of Release 1 of the Software, [Defendant's] personnel affirmatively represented and promised that the Acceptance Criteria provided in [s]ection [five] and Exhibit D of the Agreement had been fully met by [Plaintiff] thus entitling [Plaintiff] to receive the additional consideration provided for in the Agreement. . . . [Defendant] should reasonably have expected that this representation and promise would induce action or forbearance by [Plaintiff]. In fact, [Plaintiff] reasonably relied on [Defendant's] representation and promise to its detriment, and the promise must be enforced to prevent injustice.

(Am. Compl. ¶¶ 6–7.) Plaintiff contends that its "promissory estoppel claim is [sic] promises made by [Defendant] personnel *after* the parties entered into the Agreement." (Pl.'s Resp. at 10. [emphasis in original].) Plaintiff did not assert facts sufficient to show that its promissory estoppel claim is based on conduct that occurred subsequent to the Agreement and was not contemplated by the parties. *Scott*, 832 P.2d at 1003. Plaintiff's promissory estoppel claim involves contingencies and conduct covered by the Agreement. Specifically, as noted numerous times in Plaintiff's complaint, section five of the Agreement requires Defendant's written notice that the Acceptance Criteria had been met. (*Id.*, Ex. 1 § 5 [Software Licenses and Services

Agreement].) Thus, Plaintiff's allegation that it relied on representations made subsequent to the Agreement regarding Acceptance is not sufficient to state a claim for relief because the Agreement and the Exhibits specifically cover Acceptance by the Defendant. (*Id.*) In fact, these provisions of the Agreement form the entire basis of Plaintiff's breach of contract claim. Accordingly, Plaintiff cannot maintain a cause of action for promissory estoppel because there is a mutual agreement by the parties on all essential terms, and Plaintiff's promissory estoppel claim does not fit within any exception.

### *3.    Conclusions*

Based on the foregoing it is therefore ORDERED that:

Defendant's motion to dismiss (# 14) is GRANTED in part and DENIED in part. Defendant's motion to dismiss is GRANTED with respect to Plaintiff's promissory estoppel claim. Defendant's motion to dismiss is DENIED with respect to Plaintiff's breach of contract claim.

Dated this 15th day of September, 2005.

BY THE COURT:

s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge